IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

TINA MICHELLE WARD,            )
                               )
            Plaintiff,         )
                               )
v.                             )   Case No. CIV-12-036-KEW
                               )
MICHAEL J. ASTRUE,             )
Commissioner of Social         )
Security Administration,       )
                               )
            Defendant.         )

## OPINION AND ORDER

Plaintiff Tina Michelle Ward (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. See, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on March 4, 1969 and was 41 years old at the time of the ALJ's decision. Claimant completed her education through the ninth grade. She obtained her GED and took one year of college classes. Claimant worked in the past as a nurse, nurse's

3

aide, and assistant manager. Claimant alleges an inability to work beginning November 1, 2007 due to limitations resulting from hypertension, fibromyalgia, and bipolar disorder.

### Procedural History

On September 10, 2008, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On June 17, 2010, an administrative hearing was held before ALJ Trace Baldwin in Poteau, Oklahoma. On July 28, 2010, the ALJ issued an unfavorable decision. On November 25, 2011, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of light work with limitations.

### Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to

4

give appropriate weight to the opinions of treating physicians; (2) failing to properly assess Claimant's RFC; and (3) failing to properly assess the jobs Claimant could perform at step five.

### Consideration of Treating Physicians' Opinions

In his decision, the ALJ found Claimant suffered from the severe impairments of fibromyalgia and bipolar disorder. (Tr. 23). He determined Claimant retained the RFC to perform a full range of light work finding she can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk and sit up to 6 hours out of an 8 hour workday. The ALJ found Claimant could almost never use hand controls and only occasionally use foot controls. Claimant could occasionally bend, stoop, kneel, crouch, or crawl. She could perform simple and some, but not all, more complex tasks with routine supervision and could relate to supervisors and peers on a superficial work basis only. She could not relate to the general public, but could adapt to a work situation. (Tr. 25). After consultation with a vocational expert, the ALJ determined Claimant retained the RFC to perform the representative jobs of cleaner, assembler of small parts, and laundry folder. (Tr. 30). As a result, the ALJ concluded Claimant was not disabled. (Tr. 31).

Claimant contends the ALJ failed to give the appropriate

weight to the opinions of Dr. Thomas R. Dykman, Claimant's treating rheumatologist and Dr. Donald Chambers, Claimant's treating psychiatrist. On November 2, 2009, Dr. Dykman completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) on Claimant. Dr. Dykman stated Claimant could occasionally lift/carry less than 10 pounds and frequently less than 10 pounds. He also found Claimant could stand/walk for less than 2 hours in an 8 hour workday, sit for less than 6 hours in an 8 hour workday, limited pushing and/or pulling in the upper and lower extremities with the notation that "pain would prevent." Dr. Dykman stated that Claimant could never climb, balance, kneel, crouch, or crawl. (Tr. 501-02). He also found Claimant was limited in reaching in all directions, handling, fingering, and feeling, again stating "pain would prevent." Claimant was determined to be limited in exposure to temperature extremes, vibration, humidity/wetness, and hazards, concluding these conditions "would aggravate pain and pose a threat to injury." (Tr. 503).

In his decision, the ALJ cited to Dr. Dykman's treatment records as well as the aforementioned Medical Source Statement. He also set forth the findings of the agency physicians - namely, Dr. Luther Woodcock's Physical Residual Functional Capacity Assessment completed on April 6, 2009. Dr. Woodcock found Claimant could

occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds, stand, walk, and sit about 6 hours out of an 8 hour workday, and engage in unlimited pushing and pulling. (Tr. 480). In a rather unusual direct assessment of a treating physician's opinion, Dr. Woodcock specifically concludes his report by stating "medical evidence in file does not support Dr. Dykman's statement, 4/20/09, which states that clmnt is unable to perform any work." (Tr. 485).

The ALJ picked up the standard on this point from Dr. Woodcock's report and concluded in his decision that "I agree with the State Agency findings, and further agree that Dr. Dykman's statement is not supported by the medical evidence of record." (Tr. 29). The ALJ does not dispute Dr. Dykman's status as a treating physician. In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

7

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301

(quotations omitted).

The ALJ did not provide any citation to the medical record for his conclusion that Dr. Dykman's opinion was unsupported. Moreover, the ALJ did not rationalize the rejection of Dr. Dykman's opinions based upon an analysis of the <u>Watkins</u> factors. Rather, he relied upon the non-examining state agency physician's opinion as a basis for rejecting Dr. Dykman's conclusions. On remand, the ALJ shall make an independent assessment of the evidence under the <u>Watkins</u> factors with specific citations to contradictory evidence.

Claimant also challenges the manner in which the opinion of Dr. Chambers was incorporated into the ALJ's RFC assessment. Dr. Chambers completed a Mental Medical Source Statement on July 26, 2009. He concluded Claimant was markedly limited in the functional areas of the ability to maintain attention and concentration for extended periods, the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, the ability to interact appropriately with the general public, the ability to accept instructions and respond appropriately to criticism from supervisors, and the ability to get along with coworkers or peers without distracting

them or exhibiting behavioral extremes. (Tr. 497-99). He set forth his diagnosis of bipolar mood disorder and concluded the "symptoms are chronic and treatment resistant." (Tr. 499).

The ALJ found that "Dr. Chambers' findings are consistent with claimant's residual functional capacity, as it provides that she can only perform simple work." (Tr. 26). The ALJ did not specifically provide the weight he was affording Dr. Chambers' opinions, although he does not challenge his status as a treating physician and he appears to accept the limitations imposed by Dr. Chambers in whole. Consequently, it appears the ALJ gave Dr. Chambers' opinions controlling weight.

Given the wide range of limitations that Dr. Chambers found upon Claimant's ability to engage in work-related activity, it does not appear that all of his limitations were included in the ALJ's RFC determination. In particular, the ALJ did not take into account Claimant's inability to keep a schedule or maintaining regular attendance. Additionally, while Defendant represents that the ALJ limited Claimant to simple tasks, he also stated that Claimant could perform "some, but not all, more complex tasks." (Tr. 25). Certainly, Dr. Chambers' opinion would appear to contradict this finding. On remand, the ALJ shall specifically state the weight he gave to Dr. Chambers' opinion and, if he gives it controlling weight, he should account for all of the limitations

imposed by Dr. Chambers which are supported by the medical record.

### RFC Determination

Since the ALJ must reassess the opinions of Claimant's treating physicians, he will also re-evaluate his RFC findings in light of those opinions. The ALJ should also consider the limitations of the consultative examiner Dr. Wiegman and obtain a medical source statement from him if he finds that the same is necessary in order to fully evaluate the limitations upon Claimant's ability to engage in work-related activity.

### Step Five Analysis

Claimant asserts that the ALJ's hypothetical questioning of the vocational expert did not account for all of his impairments. Since the ALJ must reassess his RFC findings, he should re-examine the vocational expert and formulate his questioning to accurately reflect his RFC determination.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent

with this Opinion and Order.

IT IS SO ORDERED this 25th day of March, 2013.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE